UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUNMORE HOMES, LLC; DUNMORE LAGUNA RESERVE, LLC; PREMIER INDEMNITY COMPANY, INC.<br><br>Plaintiffs,<br><br>vs.<br><br>NORTH AMERICAN CAPACITY INSURANCE COMPANY,<br><br>Defendant. | No. 2:14-cv-02132-TLN-AC<br><br>**ORDER** |

The matter is before the Court on Defendant North American Capacity Insurance Company's ("Defendant") motion for judgment on the pleadings (ECF No. 20) as to the second and third causes of action in the First Amended Complaint ("FAC") (ECF No. 17). The FAC is brought by Plaintiffs Dunmore Homes, LLC ("DH"), Dunmore Laguna Reserve, LLC ("DLR"), and Premier Indemnity Company, Inc. ("Premier") (collectively "Plaintiffs"). For the reasons stated below, Defendant's motion is denied.

**I. Factual Allegations**

Plaintiffs allege as follows: Premier was incorporated in Hawaii on September 1, 2004. Premier is an insurance company owned by the trust of a principal in DH, which was the

1  managing member of DLR.  Premier was fully funded through payments by DH during its
2  operation, including Premier's activities in defending DH and DLR.  No other entities or
3  individuals have funded Premier.  Premier does not insure non-DH or non-DLR related entities or
4  individuals.  (FAC ¶ 9.)

5  DH filed a Chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the Eastern
6  District of California on November 8, 2007.  On September 11, 2008 a liquidation plan was
7  confirmed by the bankruptcy court, resulting in the liquidation of all of DH's assets for the benefit
8  of its creditors.  Following the liquidation, the bankruptcy was closed on August 13, 2013.  (FAC
9  ¶ 10.)

10  A series of homebuyers sued DH and DLR in the action entitled *Adsuara, et al. v.*
11  *Dunmore Homes, LLC, et al.,* Sacramento County Superior Court Case No. 34-2011-00112N08
12  (the "*Adsuara* action") on October 12, 2011.  The *Adsuara* action alleged damages to property
13  covered under Defendant's policies.  DH and DLR tendered the *Adsuara* action to NAC.  The
14  damages sought are in excess of $1 million.  Defendant declined coverage.[1]  (FAC ¶¶ 11–13.)

15  Because Defendant did not pay for the defense of DH and DLR in the *Adsuara* action,
16  which is ongoing, Premier has paid for the defense fees and costs incurred as a result of that
17  action.  The money for that defense was provided to Premier by DH prior to the *Adsuara* action
18  being filed.  Defendant has been notified of the payments made by Premier relating to the defense
19  but has continued to decline coverage.  Premier has incurred in excess of $175,000 in
20  unreimbursed attorney's fees and costs to defend the *Adsuara* action.  (FAC ¶¶ 14–15.)

21  **II. Procedural History**

22  Plaintiff filed the initial complaint on September 15, 2014.  (ECF No. 1.)  That complaint
23  was dismissed by written order of this Court based on lack of subject matter jurisdiction.  (ECF
24  No. 16.)

25  Plaintiffs subsequently filed the FAC on January 29, 2016.  (ECF No. 17.)  The FAC

---

[1] Outside of the "Factual Background" in the FAC, Plaintiffs allege that Defendant has claimed that a self-insured $25,000 retention in the policy remains unsatisfied, thus precluding Defendant's duty to defend.  However, Plaintiff alleges Defendant has known that more than $25,000 in defense fees and costs has been paid by Premier on behalf of DH and DLR.  (FAC ¶ 31.)

1 brings six causes of action: 1) declaratory relief regarding Defendant's obligation to defend and
2 indemnify DH and DLR; 2) breach of contract by Defendant in failing to defend and/or indemnify
3 DH and DLR; 3) breach of the duty of good faith and fair dealing, relative to Defendant's
4 dealings with DH and DLR; 4) violations of Cal. Bus. & Prof. Code § 17200; 5) equitable
5 contribution, relative to Premier; and 6) equitable indemnity, relative to Premier.

Defendant answered and counterclaimed on February 12, 2016.  (ECF No. 18.)  Defendant also moves for judgment on the pleadings as to claims two and three.  (ECF No. 20.)  Plaintiff has filed an opposition and Defendant has filed a reply.[2]  (ECF Nos. 22 & 24.)

### III. Legal Standard

Federal Rule of Civil Procedure 12(c) permits a party to seek judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."  "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy."  *Pit River Tribe v. Bureau of Land Management*, 793 F.3d 1147, 1155 (9th Cir. 2015) (citing *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)).  Judgment on the pleadings is appropriate when, even if all allegations in the complaint are true, the defendant is entitled to judgment as a matter of law.  *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993).  Judgment may properly be granted only if "there is no issue of material fact in dispute."  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

### IV. Analysis

A. <u>Breach of contract</u>

Defendant argues that DH and DLR do not allege facts that they have incurred any damages arising from Defendant's breach of contract.  Defendant argues that, specifically, the FAC sets forth no facts showing that DH or DLR paid the attorney's fees and costs incurred in defending and settling the underlying *Adusara* action.  Defendant cites primarily to *Emerald Bay*

---

[2] Defendant also requests that the Court take judicial notice of the decisions in *Cont'l Cas. Co. v. Nat'l Union Fire Ins. Co*. 2016 U.S. App. LEXIS 2178 (8th Cir. 2016), and *LensCrafters, Inc. v. Liberty Mut. Fire Ins. Co.,* 2008 U.S. Dis. LEXIS 119681 (Apr. 10, 2008 N. D. Cal.).  (ECF Nos. 20-2 & 24-1.)  The Court will construe this properly as a notice of additional authority.

3

1  *Community Assn. v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th 1078 (2005), a case in which
2  defendant insurance company paid a portion of the insured's legal expenses but declined to pay
3  the rest.  A second insurance company paid the balance of those expenses plus the settlement,
4  leading the court to conclude that the insured could not show it suffered any contract damages.
5  *Id.* at 1089–1090.  Essentially, *Emerald Bay* is cited for the principle that a plaintiff cannot
6  sustain an action for breach of contract where plaintiff has suffered no damages, including where
7  plaintiff has been made whole by another insurance company.  Here, Defendant argues the costs
8  of defense were incurred by Plaintiff Premier, not Plaintiffs DH or DLR.  Defendant argues it is
9  immaterial whether Defendant actually breached a contract with DH or DLR because they were
10 made whole by Premier.  *See also Ringler Associates, Inc. v. Maryland Casualty Co.*, 80 Cal.
11 App. 4th 1165 (2000); *Tradewinds Escrow, Inc. v. Truck Ins. Exchange*, 97 Cal. App. 4th 704
12 (2002); *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279 (1998).

13     In response, Plaintiffs highlight the FAC's allegations that Premier is owned by the trust
14 of a principal in DH.  Premier was funded through payments by DH during its operation,
15 including Premier's activities in defending DH and DLR.  No other entities or individuals have
16 funded Premier.  And, Premier does not insure non-DH or non-DLR related entities or
17 individuals.  (FAC ¶ 9.)  Therefore, Plaintiffs argue that an insurance relationship suggested by
18 Defendant – whereby DH and DLR have been made whole by Premier – is not present, because
19 Premier is a captive insurer and/or DH is engaging in some form of self-insurance.

20     A captive insurance corporation is "a corporation organized for the purpose of insuring the
21 liabilities of its owner. At one extreme is the case … where the insured is both the sole
22 shareholder and only customer of the captive. There may be other permutations involving less
23 than 100% ownership or more than a single customer, although at some point the term 'captive' is
24 no longer appropriate." *Clougherty Packing Co. v. C.I.R.*, 811 F.2d 1297, 1298 n. 1 (9th Cir.
25 1987).  "In between the extremes of ordinary insurance and direct self-insurance lies the captive
26 insurer transaction." *Id.* at 1300.  *Clougherty* also discussed the "economic family" concept
27 behind a captive insurance company, which generally speaking describes the insurance
28 relationship alleged by Plaintiffs here:

4

> [T]he insuring parent corporation and its domestic subsidiaries, and the wholly owned "insurance" subsidiary, though separate corporate entities, represent one economic family with the result that those who bear the ultimate economic burden of loss are the same persons who suffer the loss.... [Premiums] remain within the economic family and under the practical control of the respective parent in each situation.... [N]othing has occurred other than a movement of an asset (cash) within each family of related corporations.

*Id*. at 1301–02. *See also Richardson v. GAB Business Services, Inc.*, 161 Cal. App. 3d 519, 523 (1984) ("[S]elf-insurance … is equivalent to no insurance"); *Aerojet General Corp. v. Transport Indemnity Co.,* 17 Cal. 4th 38, 72 n. 20 ("If insurance requires an undertaking by one to indemnify another, it cannot be satisfied by a self-contradictory undertaking by one to indemnify oneself").

In summary, both parties state the relevant issues for this motion as whether in fact Premier insures DH and DLR; whether the expenses incurred in the *Adsuara* action were incurred by Premier or DH; whether DH effectively insures itself and DLR; and thus whether DH and DLR suffered damages from Defendant's alleged breach of contract. Relative to these issues, there are disputed facts that preclude judgment on the pleadings.

For example, Defendant argues that "[n]owhere in the Complaint is it alleged that [DH] paid a single cent to defend or settle the *Adsuara* action." (ECF No. 24 at 3.) However, the FAC alleges: "Premier was fully funded through payments by DH during its operation. Each dollar available to defend and indemnify through Premier was paid by DH." (FAC ¶ 9.) Defendant argues: "[DH] has suffered damage only in the sense that it can be said that any insured has suffered damages by having to pay insurance premiums to an insurance company." (ECF No. 24 at 3.) However, the FAC does not give details of a premium-payment scheme amongst Plaintiffs; the FAC does not state that DH pays premiums to Premier as if DH were an unaffiliated parent company. Defendant argues: "Premier is alleged to be an insurance company that provided a defense to Dunmore in the *Adsuara* action and it is a reasonable inference that an insurance contract is involved even if not specifically alleged." (ECF No. 24 at 4.) However, Defendant does not identify undisputed provisions in an insurance contract that would compel a finding that DH and DLR suffered no damages. The fact that the Court would be required to make that

inference – rather than have that undisputed fact before it – shows why judgment on the pleadings is inappropriate. Defendant also argues that "neither [DH nor DLR] has an ownership stake in Premier. Rather it is a principle of [DH's] trust that owns Premier." (ECF No. 24 at 8.) The FAC indeed states that Premier is "owned by the trust of a principle in [DH]." (FAC ¶ 9.) However, this allegation shows there are unknown facts underlying the insurance relationship amongst Plaintiffs.

In sum, Defendant's position is as follows: "[DH and DLR's] risk has been shifted to Premier, an entirely separate corporate entity which is not owned by [DH or DLR]. Thus, according to the allegations in the Complaint, Premier is an 'insurer', because it agreed to indemnify [DH] under a policy of insurance ... Thus, the arrangement between Premier and [DH and DLR] displays all of the features of an insurance relationship." (ECF No. 24 at 4.) Whether Defendant's position is correct depends upon specifics of the insurer-insured relationship in this case, including the degree to which risk was shifted. "Shifting risk entails the transfer of the impact of a potential loss from the insured to the insurer. If the insured has shifted its risk to the insurer, then a loss by or a claim against the insured does not affect it because the loss is offset by the proceeds of an insurance payment." *Clougherty*, 811 F.2d at 1300. In *Clougherty*, the Ninth Circuit undertook to "examine the consequences of the captive insurance arrangement to the 'insured' party … In doing so, we look only to the insured's assets, i.e. those of [the insured parent company], to determine whether it has divested itself of the adverse economic consequences of a … claim. *Id.* at 1305. In the instant case, the consequences of the insurance arrangement amongst Plaintiffs – in terms of what risk was shifted between Plaintiffs and the degree to which DH and DLR divested themselves of the consequences of the *Adsuara* action – are in dispute.

For the foregoing reasons, Defendant's motion for judgment on the pleadings as to breach of contract is denied.

B. <u>Breach of duty of good faith and fair dealing</u>

The third cause of action alleges breach of the duty of good faith and fair dealing relative to Defendant's dealings with DH and DLR. When an insurer "fails to deal fairly and in good

faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing." *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 574 (1973) (emphasis omitted).

First, Defendant argues that because the breach of contract claim must fail, the instant claim must as well. *See Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1154 (the "conclusion that a bad faith claim cannot be maintained unless policy benefits are due is in accord with the policy in which the duty of good faith is rooted"). Because the Court denies Defendant's motion as to the breach of contract claim, this argument is not viable.

Second, Defendant argues Plaintiff has not alleged cognizable damages due to alleged bad faith. Defendant argues that "[DH or DLR] has not alleged the payment of any attorneys' fees or costs to defend the claims presented in the Underlying Action. Nor has [DH or DLR] alleged any facts that it incurred any amounts in settling the claims presented in the Underlying Action. Rather … the ongoing costs of defense for [DH or DLR] have been entirely borne by Premier." (ECF No. 20-1 at 16.) Defendant argues Plaintiffs have failed to allege facts that DH and DLR suffered any "additional damages" proximately caused by Defendant's alleged misconduct. (ECF No. 20-1 at 17.) However, it is alleged that Premier is the captive insurer for DH and DLR, that DH fully funded Premier, and thus effectively that DH funded its own and DLR's defense. The FAC specifically alleges Defendant has wrongly claimed the self-insured retention of $25,000 remains unsatisfied, but that Defendant has known that in excess of $25,000 in defense fees and costs has been paid by Premier on behalf of DH and DLR. (FAC ¶ 31.) As such, the third cause of action does allege the following damages were suffered: the fees and costs of prosecuting the instant action; the fees and costs in defending the *Adsuara* action, totaling to date $168,850.02; the out-of-pocket costs incurred in connection with the defense of the *Adsuara* action totaling in excess of $7,000 to date; attorney's fees in obtaining benefits under Defendant's policies; "[o]ther consequential damages"; and "[e]xposure in the Adsuara Action to damages in excess of $1 million." (FAC ¶ 33, emphases omitted.) Thus, assuming the truth of the allegations in the FAC, Plaintiff has pleaded cognizable damages due to bad faith so as to preclude judgment on the

7

pleadings.

Third, Defendant argues that under Fed. R. Civ. P. Rule 9(g), the "[o]ther consequential damages" stated in the FAC ¶ 33(e) are not pled with adequate particularity. *See* Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated"). Defendant cites *Security-First Nat'l Bank v. Lutz*, 322 F.2d 348, 352 (9th Cir. 1963) on this issue. However, the special item in that case was "compensation for the time and money properly expended in pursuit of [] converted property." *Id.* at 352. Here, Plaintiff has requested general "consequential damages," which is a routine request in a complaint. Moreover, Defendant does not explain why a lack of specificity in this category of damages should cause the entire cause of action to be dismissed. Plaintiffs reference *Comstock v. Coronet Heating Supply Co.*, 111 Cal. App. 2d 600 (1952), which found that a plaintiff had not alleged facts "in either purported cause of action from which it is possible to ascertain how or in what manner defendant was damaged by the alleged breach of contract by plaintiff." *Id.* at 602. For the stated reasons, Plaintiffs have alleged an adequate factual and legal basis for their breach of contract and bad faith claims.

Fourth, Defendant appears to argue that the first and fourth categories of damages sought by Plaintiffs are not recoverable under the third cause of action; those categories are the "fees and costs of prosecuting this action" and "[a]ttorneys' fees in obtaining benefits under [Defendant's] policies." (FAC ¶ 33(a) and (d)). Defendant argues that to "the extent that the first or fourth categories do not envision the recovery of *Brandt* fees, there is no legal basis for recovery of attorneys' fees." (ECF No. 20-1 at 13.) *See Brandt v. Superior Court*, 37 Cal. 3d 813 (1985). "In a tort action for wrongful denial of policy benefits, *Brandt* allows the insured to recover as tort damages only the attorney fees incurred to obtain the policy benefits wrongfully denied … But attorney fees expended to obtain damages exceeding the policy limit or to recover other types of damages are not recoverable." *Essex Ins. Co. v. Five Star Dye House, Inc.*, 38 Cal. 4th 1252, 1258 (2006). The California Supreme Court has "in various decisions reaffirmed *Brandt's* rule awarding attorney fees to an insured who is injured by the bad faith conduct of the insurer." *Id.* "The *Brandt* rule is now a well-settled but narrow exception to the general rule that each party to litigation must pay its own attorney fees." *Id.* at 1259. Relative to the FAC as a whole,

1   Defendant's argument does not make sense because the categories of damages they identify – the
2   fees and costs of prosecuting the instant action and fees in obtaining benefits – appear to fall
3   within *Brandt*. Said damages appear to fall within the "fees incurred to obtain the policy benefits
4   wrongfully denied" (*Essex*, 38 Cal. 4th at 1258) because the point of this lawsuit is to recover the
5   sums incurred by DH and DLR relative to the *Adsuara* action. It is not clear if Defendant is just
6   making the point that Plaintiffs cannot double recover attorney's fees for obtaining policy benefits
7   relative to multiple causes of action in the FAC. However, whether Plaintiff should have listed
8   some items of damages in their second (breach of contract) cause of action rather than the third
9   (bad faith) cause of action does not justify dismissing the entire third cause of action. Plaintiffs
10  will be precluded from recovering fees and costs according to applicable law including *Brandt*,
11  but this argument does not entitle Defendant to judgment as a matter of law as to the third cause
12  of action.

13       Fifth, Defendant argues that punitive damages are not recoverable "independent of a
14  showing which would entitle the plaintiff to an award of actual damages." *Mother Cobb's*
15  *Chicken Turnover, Inc. v. Fox*, 10 Cal. 2d 203, 205 (1937); *Kizer v. County of San Mateo*, 53 Cal.
16  3d 139, 147 (1991). However, at this point it is disputed whether Plaintiffs have incurred actual
17  damages, and so punitive damages are not foreclosed on these grounds.

18       Sixth, Defendant also argues that attorney's fees are not recoverable for the fourth cause
19  of action which alleges violations under Cal. Bus. and Prof. Code § 17200. The essence of this
20  argument, beyond the captive insurer / self-insurance dispute noted above, is that "[u]nless
21  authorized by either statute or agreement, attorney's fees ordinarily are not recoverable as costs."
22  *Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 127 (1979). Defendant submits that the statutes,
23  Cal. Civ. Code §§ 1427 and 1428, stated in the fourth cause of action as predicates for a § 17200
24  claim, do not specifically provide for the recovery of attorney's fees. Thus, the argument appears
25  to be that an inability to recover attorney's fees for the fourth cause of action cannot serve as a
26  basis for damages for the third cause of action. Again, the Court notes only that Plaintiffs will be
27  precluded from recovery of fees that are barred by applicable law. California courts have
28  awarded attorney's fees to an insured who is injured by the bad faith conduct of the insurer.

*Essex*, 38 Cal. 4th at 1258.  Defendant does not provide support for the argument that because some types of damages listed in the fourth cause of action (or elsewhere in the FAC) are not recoverable, the entire third cause of action must be dismissed.

For the foregoing reasons, Defendant's motion for judgment on the pleadings as to breach of the duty of good faith and fair dealing is denied.

**V. Conclusion**

For the stated reasons, Defendant's motion for judgment on the pleadings (ECF No. 20), as to the second and third causes of action in Plaintiffs' first amended complaint, is DENIED.

Dated: April 19, 2016

Troy L. Nunley
United States District Judge